FILED

09/27/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 22, 2017 Session

## IN RE PRESTON L.

**Appeal from the Circuit Court for Sumner County**
**No. 2015-CV-1102      Joe Thompson, Judge**

_____

### No. M2016-02338-COA-R3-PT

_____

Mother and stepfather filed a parental termination action against the father of a minor child, and the trial court terminated the father's parental rights on the following grounds: (1) incarceration under a sentence of ten years or more and the child was under the age of eight when the sentence was entered; (2) willful failure to support during the four months prior to incarceration; and (3) wanton disregard. We reverse the trial court's determination that the petitioners presented clear and convincing evidence to support grounds of willful failure to support and wanton disregard. We affirm as to the ground of incarceration under a sentence of ten years or more and as to the trial court's best interest determination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Michael Wilson Taylor, Gallatin, Tennessee, for the appellant, Landon J.L.

Nancy Krider Corley, Nashville, Tennessee, for the appellees, Ashley K.R. and Nicholas C.R.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Landon J.L. ("Father") and Ashley K.R. ("Mother") are the parents of Preston, born in September 2003. Father is currently incarcerated in Ohio. On October 1, 2015, Mother and Stepfather, Nicholas C.R., filed a petition for termination of Father's parental

rights and for step-parent adoption. In their petition, Mother and Stepfather alleged that Father abandoned the child in the following ways:

a. He is incarcerated for a period of more than ten (10) years and will not be released from prison until after the child reaches majority on September 23, 2021; thus the Father has willfully abandoned his child pursuant to T.C.A. § 36-1-113(g)(6).

b. He has willfully failed to pay child support for four (4) months prior to the time he was charged, convicted, and incarcerated; thus Father has abandoned this child pursuant to T.C.A. § 36-1-102(1)(A)(i) and (iv) by his willful failure to pay child support.

c. He has willfully failed to visit for four (4) months prior to the time he was charged, convicted, and incarcerated; thus Father has abandoned this child pursuant to T.C.A. § 36-1-102(a)(A)(i) and (iv) by his willful failure to visit his child.

d. He has engaged in conduct prior to his incarceration that showed a wanton disregard for the welfare of his child pursuant to T.C.A. § 36-1-102(1)(A)(iv).

Father filed a response to the petition, and the trial court appointed counsel to represent him.

In April 2016, Father filed a motion to dismiss the termination petition on the grounds that the petitioners had failed to respond to his request for discovery that was served on them in December 2015; and that more than six months had passed since the filing of the petition and the matter had not been heard, contrary to the provisions of Tenn. Code Ann. § 36-1-113(k). A few days later, the petitioners filed a motion to set the case for trial. The trial court heard Father's motion to dismiss in May 2016 and, in an order entered on May 19, 2016, denied the motion. In an order entered on May 23, 2016, the case was set for trial on September 16, 2016.

On September 1, 2016, Father filed a motion to continue the final hearing to July 2017 on the grounds that he "may be eligible for release under Ohio 'Judicial Release'" in March 2017. Once released from incarceration in Ohio, Father would have to serve eighty-two (82) days in prison in Indiana. Father argued that, if he were released early, he would "be available to participate in person" in the termination proceedings; he, therefore, requested that the court "continue the matter so that he may have an opportunity to be present in court to defend his parental rights." Father's motion was heard on September 8, 2016, and the trial court denied the motion, reasoning that there was no guarantee that Father would be released early and that it was not in the child's best interest to continue the matter. Father would be allowed to participate by video conferencing, if possible.

The case was heard over two days in September and October 2016. Father participated by telephone. The court heard testimony from Mother, Preston, Stepfather, and Father. The trial court determined that Mother and Stepfather had proven three of the four grounds by clear and convincing evidence: (1) incarceration with a sentence of ten years or more when the child is under eight (8) years old, pursuant to Tenn. Code Ann. § 36-1-113(g)(6); (2) willful failure to support during the four months preceding incarceration, pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(i) and (iv); and (3) wanton disregard, pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv). The court further found that termination was in the best interest of the child. The court, therefore, ordered that Father's rights be terminated and that Stepfather be allowed to adopt the child.

On appeal, Father raises the following issues:

(1) Whether the trial court erred in finding that Father willfully failed to pay child support in the four-month period immediately preceding his incarceration.
(2) Whether the trial court erred in finding that Father displayed wanton disregard for his child prior to his incarceration.
(3) Whether the trial court erred in allowing the termination petition to be heard beyond the six-month time frame contemplated in Tenn. Code Ann. § 36-1-113(k) and in denying Father's motion to dismiss; and whether the trial court erred in denying Father's motion for a continuance pending Father's possible early release.
(4) Whether the trial court erred in finding that termination of Father's parental rights was in the child's best interest.

STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). This right is not absolute, however. If a compelling state interest exists, the state may interfere with parental rights. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Our legislature has enumerated the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g). A parent's rights may be terminated only where a statutory ground exists. *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

Because terminating parental rights affects fundamental constitutional rights, termination cases require a court to apply a higher standard of proof. *State Dep't of Children's Servs. v. A.M.H.*, 198 S.W.3d 757, 761 (Tenn. Ct. App. 2006). First, a court must determine by clear and convincing evidence that at least one of the statutory

grounds for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). After a court makes this determination, a court must find by clear and convincing evidence that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted)).

Because of the heightened standard of proof required in termination cases, we must adapt the customary standard of review established by Tenn. R. App. P. 13(d). *Id.* In accordance with Tenn. R. App. P. 13(d), we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. *Id.* Next, we must determine whether the facts establish by clear and convincing evidence the elements necessary to terminate parental rights. *In re M.J.B.*, 140 S.W.3d at 654.

ANALYSIS

I.      Procedural issues

A.  Motion to dismiss/six-month time frame

Tennessee Code Annotated section 36-1-113(k) states:

The court shall ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child. The court shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing. *If such a case has not been completed within six (6) months from the date the petition was served, the petitioner or respondent shall have grounds to request that the court of appeals grant an order expediting the case at the trial level.*

(Emphasis added). In this case, once six months had passed from the filing of the petition to terminate, Father filed a motion to dismiss the petition. As the petitioners point out, the statute does not contemplate dismissal of the termination petition for failure to comply with the six-month time period set forth in Tenn. Code Ann. § 36-1-113(k). Rather, the remedy is for the court to expedite the hearing of the case. Thus, we find no error in the trial court's denial of Father's motion to dismiss.

B.   Motion for continuance/early release

Father's other procedural argument is that the trial court erred in denying his motion for a continuance pending his possible early release from prison.

In reviewing a trial court's decision to grant or deny a motion to continue, we apply the abuse of discretion standard.   *In re Lydia N.-S.*, No. M2016-00964-COA-R3-PT, 2017 WL 420344, at *4 (Tenn. Ct. App. Jan. 31, 2017).   An abuse of discretion occurs when a trial court "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).   The following standards apply with respect to a trial court's ruling on a motion for continuance:

> Decisions regarding the granting or denial of a continuance are fact-specific and should be viewed in the context of all existing circumstances present at the time of the party's request for continuance. In order to prove that a requested continuance is justified, the party requesting the continuance "must supply some 'strong excuse' for postponing the trial date." When considering a motion for continuance, the following factors are relevant to the trial court's decision: "'(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.'"

*Tidwell v. Burkes*, No. M2015-01270-COA-R3-CV, 2016 WL 3771553, at *5 (Tenn. Ct. App. July 8, 2016) (internal citations omitted).

The hearing was set for September 16, 2016.  In his motion, filed on September 1, 2016, Father alleged that he "had reason to believe" he would be "eligible for release" in March 2017.  He, therefore, wanted to move the hearing until July 2017 to allow him the opportunity to appear at the hearing in person.  In an order filed on September 19, 2016, the trial court denied Father's motion, stating that there was "no guarantee that [Father] would be released early" and that it was not in the child's best interest to continue the case.  The court would allow Father to participate in the hearing by videoconferencing, if possible.

We find no abuse of discretion in the trial court's denial of Father's motion for a continuance.  The statute establishes a goal of deciding termination cases within six months, and there was no certainty that Father would be released the following year.

- 5 -

## II. Willful failure to pay child support prior to incarceration

A parent's rights may be terminated upon proof by clear and convincing evidence that the parent "abandoned" his or her child. Tenn. Code Ann. §§ 36-1-113(c)(1), (g)(1). There are a number of different statutory definitions of abandonment. *See* Tenn. Code Ann. § 36-1-102(1)(A). Tennessee Code Annotated section 36-1-102(1)(A)(iv) defines abandonment as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has *willfully* failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

(Emphasis added). A court must find that the abandonment was "willful." Tenn. Code Ann. § 36-1-102(1)(A)(iv). Pursuant to Tenn. Code Ann. § 36-1-102(1)(D), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means "the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." "[T]oken support" is defined to mean "that the support, under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B).

In the present case, Father was incarcerated in mid-February 2009. Thus, the relevant four-month time period runs from mid-October 2008 through mid-February 2009. The trial court made the following pertinent findings:

> [T]he last payment of child support was August 1, 2008. The biological father was incarcerated or in jail waiting posting bond from March 2008 through July 2008. The biological father paid no support for the months of August, September, October, November, December, 2008, January and mid-February 2009, which was unrefuted. The biological father testified he had difficulty obtaining a job because of his pending charges, which was the [result] of his own conduct. He had the resources to post bond and was free on bond for several months and at that time his child support payments stopped. He was also able to travel to Nashville and back and forth to Indiana. The Court finds no evidence that his failure to pay support during August 1, 2008 until mid-February 2009 was anything other than willful.

There is no dispute that Father did not pay child support during the relevant time period. The issue is whether his failure to pay support was willful. We disagree with the trial court's conclusion that Father's failure to pay child support was willful.

To establish willfulness in this context, a petitioner must show that "a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013); *see also In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (stating that a person acts willfully if he or she knows what he or she is doing and has the intention to do what he or she is doing). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). A parent will not be found to have abandoned his or her child if the failure to support the child was not within his or her control. *Id.*

It is axiomatic that "in order to establish the ground of abandonment by willful failure to support by clear and convincing evidence, the party seeking termination must generally 'submit . . . evidence regarding [the parent's] employment, income, [or] other non-monetary assets,' as well as the parent's 'expenses during the four-month period.'" *In re Michael B.*, No. M2015-02497-COA-R3-PT, 2016 WL 7486361, at *11 (Tenn. Ct. App. Oct. 6, 2016) (quoting *In re Destiny H.*, No. W2015-00649-COA-R3-PT, 2016 WL 722143, at *9 (Tenn. Ct. App. Feb. 24, 2016)). Such evidence need not be an accounting of every dollar earned and spent, and it need not even be tied to dollars and cents, but it must be clear and convincing evidence that the parent had the capacity to pay support, did not do so, and had no justification for not doing so. In the case of *In re Adoption of Angela E.*, 402 S.W.3d at 641, in the context of examining whether the father's payments were "token support," our Supreme Court stated that the evidence of the father's income and expenses was "limited at best" and failed to prove that his payments were "token support." *See also In re Michael B.*, 2016 WL 7486361, at *11 (discussing *In re Adoption of Angela E.* and other cases regarding proof of employment, income, other non-monetary assets, and expenses necessary to establish a parent's capacity to pay support).

The petitioners in this case did not submit evidence regarding Father's regular expenses other than testimony that Father was living with his father. They assert that Father was "employed part of the time," but the cited section of the record does not reference any employment during the relevant time period. The petitioners also argue that Father "had multiple expenses for bondsman, fees, resulting from his pending criminal charges, which he was able to pay." The referenced testimony provides as follows:

> In May of 2008 while I was incarcerated . . . there was a lot of money going on. I was trying to get out of jail, I mean, so there was a lot of raising bond money, getting money from family, getting money from a lot of places, and trying to make sure that in the meantime I don't get some contempt order that I'm not paying child support.

Father's testimony relates to May 2008, when he was still paying child support, and indicates that he had to obtain money from outside sources in order to raise his bond. This testimony does not support the petitioners' argument that Father had ample resources during the relevant four-month time period to pay expenses related to his criminal charges. The petitioners further assert that Father "found the money during fall of 2008 to travel back and forth from Ohio, Kentucky, and Tennessee and to get married." There is no reference in the record to Kentucky; presumably, the petitioners intended to refer to Ohio, Indiana, and Tennessee. After posting bond in Ohio, Father went to Indiana, posted bond, and remained there until he could return to Tennessee to live with his wife. He returned to Indiana because the bondsman required him to do so in anticipation of his trial. Thus, much of the travel referenced by the petitioners was not voluntary, and there is no evidence regarding the costs associated with these trips. The petitioners presented no evidence of any costs associated with Father's remarriage.

The petitioners' main argument relies upon the same reasoning applied by the trial court. They assert that Father's failure to pay was willful because "it was voluntary and intentional conduct on his part that led to his pending criminal charges which made employers not want to hire him." Recent caselaw does not support this reasoning. In *In re Noah B.B.*, No. E2014-01676-COA-R3-PT, 2015 WL 1186018, at *8 (Tenn. Ct. App. Mar. 12, 2015), the mother admitted that she had failed to pay child support during the relevant four months, but the court found that "the evidence regarding Mother's capacity to pay support is quite sparse." In vacating the trial court's finding of willful failure to support, the appellate court stated, in pertinent part:

> At the time of trial, Mother was unemployed and "trying to find a job." *She said her criminal charges served as a barrier to finding employment because potential employers discovered her criminal history when they ran a background check.* Mother testified that her last job was the previous summer (almost a year earlier, while the termination case was pending, and not within the relevant four-month period), when she worked part-time at a learning center until she was no longer needed.
>
> . . . At the conclusion of Mother's testimony, the trial judge asked Mother if she was working between mid-December 2012 and mid-June 2013, presumably in reference to the timeframe that would be relevant to the abandonment analysis. Mother simply responded, "Yes." However, there was no mention of where she worked during that period, whether she

worked during the entire time period, how many hours she worked, how much income she earned, or what expenses Mother owed at that time.

. . . .

The evidence regarding Mother's capacity to pay child support in this case is far more limited and far less convincing than the evidence presented in *Angela E.* The burden to prove Mother's abandonment by willful failure to support rests squarely on the petitioners. However, the record before us does not indicate that the petitioners submitted clear and convincing evidence of Mother's willful failure to support. *In fact, the record before us does not indicate that the petitioners submitted clear and convincing evidence of Mother's capacity to provide support or that she lacked a justifiable excuse for failing to provide support.* Petitioners did not submit sufficient evidence of Mother's employment status during the relevant four-month period, the number of hours she worked, the duration of her employment, her rate of pay, or whether Mother had assets other than regular income that might contribute to the support of her child. The record contains no evidence regarding Mother's financial means, expenses, or obligations during the relevant four month period. Without this basic information, we are unable to determine, by clear and convincing evidence, whether Mother had the capacity to provide support. It is not enough for a petitioner to "simply prove that Mother was not disabled during the relevant timeframe" and therefore assume that she was capable of working and paying child support. *In re Josephine E.M.C.*, 2014 WL 1515485 at *18 (Tenn. Ct. App. 2014). Rather, petitioners must also present clear and convincing evidence to establish that she had no justifiable reason for not providing support to the child, which evidence might include Mother's assets and/or expenses.

*In re Noah B.B.*, 2015 WL 1186018, at *8-9 (emphasis added). Thus, the court in *In re Noah B.B.* determined that the evidence presented by the petitioners, including the evidence regarding mother's criminal history and its impact on her ability to obtain employment, did not constitute clear and convincing evidence that the mother had the capacity to pay child support. *Id.* at *9.

Similarly, in *In re Saliace P.*, No. W2015-01191-COA-R3-PT, 2016 WL 304543 (Tenn. Ct. App. Jan. 26, 2016), the issue was whether the mother's failure to pay child support was willful. *In re Saliace P.*, 2016 WL 304543, at *5. Mother had moved to Florida after being evicted from her apartment in Tennessee. *Id.* In finding the mother's failure to pay child support was not willful, the court stated:

She testified that she "sporadically" worked "side jobs" during the fourteen months that she resided in Florida. She explained that she "did babysitting

jobs" for her friends in order to avoid paying rent to live with them, but she "wasn't really making the money." Mother said she applied for work at more than a dozen locations such as restaurants and convenience stores, and she had some interviews, *but no one would hire her because of her criminal record for petty theft and domestic assault.* Mother testified that the only steady job she held was detailing classic cars for an individual for six weeks, earning $5.50 an hour and working at most 25 hours a week. However, she did not specify when she held this job. Mother testified that she had no other steady work while in Florida. She also testified that she owned no significant assets aside for a one-half interest in a 1999 Ford Explorer that she purchased with a friend. She began receiving food stamps in Florida in March 2014, about three months before the termination petition was filed. Mother admitted to using drugs while in Florida but testified, "I was not paying for them. People that I knew just felt sorry for me."

This evidence does not clearly and convincingly establish that Mother had the capacity to pay child support during the relevant four-month period and failed to do so without a justifiable excuse. DCS points to Mother's limited expenses while living in Florida, due to her receipt of food stamps and the absence of a rent payment. However, the record is devoid of evidence that Mother earned *any* income during the relevant four-month period.

*Id.* (footnote omitted)(first emphasis added). Despite the mother's criminal record, the court found that clear and convincing evidence did not establish that her failure to support her children was willful. *Id.*

As our Supreme Court has reiterated, the burden of proof is on the petitioners to "prove by clear and convincing evidence that the opposing party had the capacity to pay support but made no attempt to do so and did not possess a justifiable excuse." *In re Adoption of Angela E.*, 402 S.W.3d at 641. In the present case, the petitioners have failed to present clear and convincing evidence to establish that Father willfully failed to support the child during the relevant four-month time period.

### III. Wanton disregard

One of the definitions of abandonment included in Tenn. Code Ann. § 36-1-102(1)(A)(iv), quoted above, is that "the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Unlike the other forms of abandonment included in Tenn. Code Ann. § 36-1-102(1)(A)(iv), abandonment by wanton disregard is not limited to the four months immediately preceding the parent's incarceration. *In re Audrey S.*, 182 S.W.3d at 871. The wanton disregard test for abandonment "reflects the commonsense notion that parental

incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child." *Id.* at 866. Although incarceration alone is not sufficient to prove abandonment, "[a] parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *Id.* This court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867-68.

In the present case, the trial court found "no evidence of substance abuse or probation violations or any criminal activity prior to 2008 and 2009." The trial court went on to state, however, that "the biological father's criminal activities of aggravated robbery involving a weapon when the child was five (5) years old [which led to Father's incarceration with a sentence of ten years or longer] is especially concerning to the Court, when during the same time he's not supporting his child." The court determined that "[t]hose factors are sufficient to establish wanton disregard." We respectfully disagree. As discussed above, we have concluded that Father did not willfully fail to pay child support. Thus, the only remaining basis for a finding of wanton disregard is the crimes for which he is incarcerated: robbery, aggravated robbery, carrying concealed weapons, and improperly handling firearms in a motor vehicle.[1] In *In re Audrey S.*, the court made the following statements regarding the effect of incarceration alone:

> [P]arental incarceration is not an infallible predictor of parental unfitness. Accordingly, Tenn. Code Ann. § 36-1-102(1)(A)(iv)'s second test for abandonment does not make incarceration alone a ground for the termination of parental rights. An incarcerated or recently incarcerated parent can be found guilty of abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child. Thus, the parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.

*Id.* at 866 (footnote omitted). There is no evidence in this case of a "broader pattern of conduct that renders [Father] unfit or poses a risk of substantial harm to the welfare of the child."[2] *Id.*

---

[1] The record shows that these are the offenses for which Father was incarcerated in Ohio. He was also convicted in Indiana of similar offenses committed around the same time period and was required to go to Indiana to serve another eighty-two (82) days in prison after his release from incarceration in Ohio.

[2] Mother cites facts set forth in a petition to suspend visitation she filed against Father in August 2007. In its order addressing Mother's petition, the trial court lifted a temporary restraining order to allow Father

## IV. Incarceration under sentence of ten years or more

Father does not dispute that the petitioners proved by clear and convincing evidence that his parental rights should be terminated under Tenn. Code Ann. § 36-1-113(g)(6), which states that the parent has been incarcerated "as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court." Clear and convincing evidence supports the trial court's determination that Father's parental rights should be terminated based on this ground.

## V. Best Interest

Having found that clear and convincing evidence exists to support one ground for terminating Father's parental rights, we next consider whether the trial court properly determined that termination of Father's parental rights is in the child's best interest. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (noting that the trial court is only required to find one statutory ground for terminating a parent's rights). In reviewing the trial court's best interest determination, we are mindful that, "Facts relevant to a child's best interests need only be established by a preponderance of the evidence, although DCS must establish that the combined weight of the proven facts amounts to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d 507, 535 (Tenn. 2016) (citing *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015)).

The factors a trial court is to consider in determining whether terminating a parent's rights to his or her child is in the child's best interest are set forth in Tenn. Code Ann. § 36-1-113(i). The best interest analysis "does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors"; rather, the relevance and weight accorded to each factor depends upon the facts of each case. *In re Audrey S.*, 182 S.W.3d at 878. Moreover, the list of factors in Tenn. Code Ann. § 36-1-113(i) is not exhaustive, and the court may consider any other relevant factors. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005); *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004).

In this case, the trial court made the following findings regarding the best interest of the child in this case:

---

to have visitation with his son pursuant to certain conditions, including a home study by DCS. Visitation was to be supervised, and Father was not to use alcohol or drugs around the child. Father was not allowed to have visits at his apartment. The order does not include any findings of misconduct or abuse by Father. At the time of Father's arrest in March 2008, the Department had not completed the home study. Because the continuation of the limitations on Father's visitation was conditioned, at least in part, upon the results of the home study, we decline to credit the allegations of Mother's petition for purposes of termination.

This nonexclusive list of factors found in T.C.A. § 36-1-113(i) includes the following:

(1) Whether the parent has made such an adjustment of circumstances, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent.

That the relationship between the biological father and the son was not a strong relationship. This Court finds Mother to be credible in her testimony with respect to the sporadic nature of his involvement with his son prior to incarceration.

That this Court does not know what the biological father's circumstance will be after he leaves incarceration and the very uncertainty of the possibility of his early release is in and of itself problematic as the release could be with many conditions or might not occur at all and the sheer uncertainty of what might happen is a concern that the Court thinks is not in the child's best interest; he needs some certainty in his life, especially at age thirteen (13). If the biological father serves his full sentence, the child will be an adult when the biological father is released.

(2) Whether the parent has failed to effect a lasting adjustment is in the same category as factor number one (1).

(3) Whether the parent has maintained regular visitation or contact with the child. That this Court does not find there was regular visitation, partly due to distance between the parties with the biological father's incarceration, but even before his incarceration there was no regular visitation. The biological father did take certain steps to try to establish his parenting time, but there was no regular visitation.

(4) Whether a meaningful relationship has otherwise been established. That clearly there has not been a meaningful relationship between the biological father and the child established in this case.

That this Court observed and noted the fact that the child became visibly moved and emotional at the prospect of this adoption not occurring. The Court is to focus on what is the best interest from the child's perspective. Step-Father has been a part of this child's life since 2007 when he was age three and has been involved in some of the basic milestones of childhood such as teaching him to tie his shoes. That these have occurred between the child and the Step-Father, not the child and the biological father.

(5) The effect of a change in caretakers and physical environment is likely to have on the child's emotional, psychological, or medical condition. That given the biological father's current situation, even if this Court did not terminate parental rights, this Court does not think there would be much visitation. This Court finds that the child's grades suffered as a result of his growing awareness of the biological father's situation and his relationship with the biological father.

(6) That there is no issue of brutality or abuse or physical environment.

(7) That there is no issue of the biological father's mental or emotional state; he has been candid in taking responsibility for his actions in 2008.

(8) Whether the parent has paid child support consistently with the guidelines.  That clearly that has not been the case since August 1, 2008.

That this Court is looking at the child's current situation.  He is in a stable home, has a solid home, has a solid relationship with Step-Father; has a solid relationship with sister and good relationship with step-sister, all of which need to be fostered and encouraged as this is in the child's best interest.

That the child is involved in athletic activities, with soccer with Step-Father as coach, with fishing and athletic events with Step-Father, that Step-Father has been an equal partner as caregiver to the child.

This Court also observed and considered the child's own reaction when testifying about his relationship with his biological father and his reaction as a thirteen (13) year old boy to his biological father being incarcerated two (2) states away.  The Court does not think it would be in the child's best interests to continue to have this relationship with his biological father.

This Court concludes that it is in the child's best interests that the biological father's rights be terminated and that the Step-Father be permitted to adopt this child.

As discussed above, we disagree with the trial court's findings regarding child support.  In all other respects, however, the evidence does not preponderate against the trial court's findings on best interests.  Notwithstanding Father's sincere pleas of repentance, his love for his son, and his attempts to establish a relationship with his son from prison, the trial court correctly emphasizes that the best interest inquiry must be made from the child's perspective, not that of the parent. *See White*, 171 S.W.3d at 194.  The general assembly has expressly provided:  "In all cases, when the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child, which interests are hereby recognized as constitutionally protected . . . ."  Tenn. Code Ann. § 36-1-101(d).  In this case, the child has no meaningful relationship with Father and, under all of the statutory factors, it is in the child's best interest for Father's rights to be terminated.

- 14 -

CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed one-half against Father and one-half against the petitioners. Execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE